IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Case No.  05-cv-01899-LTB-CBS

DANIEL FANNING, and
CYNTHIA FANNING, husband and wife,

      Plaintiffs,

v.

DIANON SYSTEMS, INC., a Delaware corporation,

      Defendant.

_____

ORDER

_____

This matter is before me on a Motion For Summary Adjudication of Question of Law

**[Doc # 39]** filed by Defendant, Dianon Systems, Inc., in which it moves for summary adjudication

pursuant to Fed. R. Civ. P. 56 of their Second Defense against Plaintiffs, Daniel and Cynthia

Fanning.  Specifically, Defendant seeks an order determining that the Colorado Healthcare

Availability Act, C.R.S. § 13-64-101, *et seq.*, (the "HCAA") applies in this case to limit Plaintiffs'

recovery for damages – specifically, non-economic damages – against it.  Oral arguments would

not materially assist me in the determination of this motion.  After full consideration of the parties'

briefs, the related pleadings and the case file, I DENY Defendant's motion for the following

reasons.

*I. Underlying Facts*

On September 24, 2002, Daniel Fanning underwent a biopsy of his prostate in Fort

Collins, Colorado.  The tissue from that biopsy was sent to an anatomical and pathology

laboratory located in Connecticut that is owned and operated by Defendant, who is incorporated in Delaware with its principal place of business located in Connecticut.  At Defendant's Connecticut laboratory, Mr. Fanning and another patient's prostate tissue specimens were apparently mislabeled during processing.  The tissue was then examined by a pathologist employed by Defendant.  The result of this examination was a report containing a prostate cancer diagnosis for Mr. Fanning on tissue specimens that did not belong to him.

In reliance on the inaccurate report and diagnosis, Mr. Fanning underwent cancer treatment in the form of a radical prostatectomy on October 18, 2002.  Subsequent pathological review of his removed prostate revealed that it was not cancerous.  As a result, Defendant conducted an internal investigation of the inaccurate report and found the tissue specimen processing/labeling error.  Mr. Fanning and his wife subsequently filed this lawsuit pursuant to diversity of citizenship jurisdiction.  Plaintiffs seek compensatory damages based on Defendant's negligence, including loss of consortium damages.

In its answer to Plaintiffs' complaint, Defendant asserts in its Second Defense that Plaintiffs' claims are governed by and subject to the provisions of the HCAA and its corresponding limitations of liability.  In this motion, Defendant seeks a ruling that Colorado substantive law regarding damages applies to this diversity action and, as a result, the HCAA applies to limits the amount Plaintiffs may recover.

## II.  Conflict of Law

The parties agree that the threshold question raised here is whether Colorado or Connecticut law is applicable to limit the damages available on Plaintiffs' negligence-based claims. In making this determination, because jurisdiction is based on diversity of citizenship, I must apply

Colorado's choice-of-law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Trierweiler v. Croxton and Trench Holding Corp.,* 90 F.3d 1523, 1532 (10th Cir. 1996)(to determine which state's substantive law to apply, a federal court applies the choice of law provisions of the state in which the court sits).

Colorado follows the principles set forth in the Restatement Second of Conflict of Laws (the "Restatement"), known as the "most significant relationship" test, to determine which state's substantive laws govern or apply in a multi-state tort action such as this. *First National Bank v. Rostek,* 182 Colo. 437, 448, 514 P.2d 314, 320 (1973); *Scheer v. Scheer,* 881 P.2d 479, 480 (Colo. App. 1994); *Hoiles v. Alioto,* 345 F.Supp.2d 1178, 1183 (D. Colo. 2004). The specific contacts to be taken into account when assessing which state has the most significant relationship to a tort claim are set forth in Section 145 of the Restatement, and include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*See Conlin v. Hutcheon*, 560 F.Supp. 934, 935 (D.C. Colo. 1983)(applying section 145 contacts in a negligence action).

Section 145 further provides that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." *See also Sabell v. Pacific Intermountain Express Co.,* 536 P.2d 1160, 1164 (Colo. App. 1975). In making this assessment and assigning a degree of importance to each significant contact, the following considerations – set forth in section 6 of the Restatement – must be analyzed: (a) the needs of the of the interstate and

3

international systems;  (b) the relevant policies of the forum; (c) the relevant policies of other

interested states and the relevant interests of those states in the determination of the particular

issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular

field of law; (f) certainty, predictability and uniformity of results; and (g) ease in the determination

and application of the law to be applied.   *See also Scheer v. Scheer, supra*, 881 P.2d at 480.

## III. Analysis

In its motion, Defendant argues that Colorado substantive law applies here because

Colorado has the most significant relationship to the events and parties in the case and Colorado

has a special and compelling interest in personal injury actions brought against healthcare

institutions providing services to people living in Colorado as evidenced by the HCAA.  In

response, Plaintiffs contend that Connecticut substantive law applies because Connecticut has the

most significant relationship to the events in the case.  Plaintiffs also argue that policy

considerations also weigh in favor of applying Connecticut law here because the primary  purpose

of damages limitation legislation, such as the HCAA, is to protect resident defendants from

excessive financial burdens, not to limit compensation to wronged plaintiffs.  After weighing the

applicable factors, I conclude that Connecticut has the most significant relationship to the

circumstances of this case.

## A.  Place of Injury

Defendant's primary argument related to the significant relationship contact analysis is that

Plaintiffs' personal injuries occurred in Colorado.   Defendant relies on Section 146 of the

Restatement – which specifically applies to personal injury torts – and provides that "the local law

4

of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship." Because the personal injury alleged here is the prostatectomy that occurred in Colorado, Defendant argues that Colorado law should apply. *See also* Restatement Second, Conflicts, § 146, comment e ("[w]hen conduct and injury occur in different states . . . the local law of the state of injury will usually be applied to determine most issues involving the tort").

Defendant's argument mischaracterizes the nature of this lawsuit. The tortious conduct alleged by Plaintiffs is not the resulting personal injury to Mr. Fanning, in the form of the unnecessary prostatectomy, but rather Defendant's negligence in misreporting the results of his prostate tissue specimen test. The prostatectomy was only a manifestation of the previous misconduct. As a result, Defendant's reliance on Section 146 of the Restatement for the "presumption" that Colorado law applies, even if applicable here, is misplaced. *See Lewis-DeBoer v. Mooney Aircraft Corp.,* 728 F.Supp. 642, 645 (D.Colo. 1990)(ruling that the place of the underlying airplane accident in a products liability case was not "the place of injuring conduct").

Plaintiffs contend, and I agree, that the injury that took place in this case occurred in Connecticut at the time of the processing error at Defendant's lab. "When the injury occurred in a single, clearly ascertainable state and when the conduct which caused the injury also occurred there, that state will usually be the state of the applicable law with respect to most (tort) issues." Restatement § 145(2) comment e. I likewise agree with Plaintiffs that to the extent that the injury occurred in Colorado, such place of injury was merely fortuitous – in that Defendant's negligence could have resulted in injury to any other state where the patient happened to live –

5

and, as such, the weight afforded to place of the injury in a significant relationship analysis is significantly diminished.  *See e.g. Lewis-DeBoer v. Mooney Aircraft, supra*, 728 F.Supp. at 644; *Kozoway v. Massey-Ferguson, Inc.,*722 F.Supp. 641 (D. Colo. 1989);  *Patten v. General Motors Corp., Chevrolet Motor Div.,* 699 F.Supp. 1500, 1506 (W.D. Okl. 1987).   This is a classic case in which the location of the resulting physical injury "bears little relation to the occurrence and the parties with respect to the particular issue." Restatement § 145(2) comment e.

B.  *Place of Injuring Conduct*

        Likewise, the place where the negligent conduct causing the injury occurred is also balanced in favor of Connecticut.  It is undisputed that the underlying conduct causing the injury took place in Connecticut.  Because the negligent conduct constitutes the gravamen of this case, it clearly weighs heavily in the most significant relationship test under these facts.

        In addition, the place of the injuring conduct is significant when assessing which state's law related to tort damages should apply in light of the opposing  policy concerns of Colorado and Connecticut.  Connecticut does not have laws limiting the amount of personal injury damages against medical personnel which presumably reflects a policy or goal to deter negligent conduct in this area of law.  *See Lewis-DeBoer v. Mooney Aircraft, supra*, 728 F.Supp. at 646; *Kozoway v. Massey-Ferguson, supra,* 722 F.Supp. at 644 ("the existence of unlimited punitive and exemplary damages . . . illustrates that state's policy to deter, punish and make an example of, certain dangerous corporate conduct").

Colorado, in contrast, has enacted the HCAA which limits the total damages and non-economic damages in civil actions against health care institutions. *See* C.R.S. § 13-64-302(1)(b)&(c). The policy of the HCAA is set forth in the legislative declaration which indicates that "it is in the best interests of the citizens of this state to assure the continued availability of adequate health care services to the people of this state by containing the significantly increasing costs of malpractice insurance for medical care institutions . . ." C.R.S. § 13-64-102. *See also Scholz v. Metropolitan Pathologists, P.C.,* 851 P.2d 901, 907 (Colo. 1993)("HCAA was enacted in 1988 in response to legislative findings which indicated severe problems concerning health care availability due to the rising costs of malpractice insurance premiums in Colorado).

"The interest of a state in having its negligence rules applied in the resolution of a particular issue will depend upon the policy sought to be achieved by that rule and by the relation of the state to the occurrence and the parties. " *Sabell v. Pacific Intermountain Express, supra,* 536 P.2d at 1164. Here, both Colorado and Connecticut have an interest in applying their law to the alleged conduct in question, but their related policy interests are different. Colorado's legislature has chosen to balance the competing interest of fairly compensating injured plaintiffs with assuring its citizens access to adequate health care services in light of rising medical malpractice insurance premiums. Connecticut, on the other hand, has chosen not to limit a plaintiff's recovery despite any threat to the availability of affordable health care. As a result, when balancing the competing policy considerations of Colorado and Connecticut, I conclude that Connecticut – as the place of the injuring conduct – has the greater interest in the outcome of this litigation and should be afforded more weight in the most significant contacts analysis. *Lewis-DeBoer v. Mooney Aircraft, supra*, 728 F.Supp. at 646 (ruling that although Colorado's policy of

7

negating a windfall to a decedent's heirs in a wrongful death suit may be "transgressed" by

applying Texas law – where the policy is to deter harmful conduct – because "defendant's alleged

harmful conduct occurred in Texas and defendant otherwise has close ties to Texas, [a]pplication

of Texas law furthers that state's policy interests").

*C.  Domicile, Residence, Nationality, Place of Incorporation & Place of Business of the Parties*

Plaintiffs are residents of and domiciled in Colorado.  Defendant's principal place of

business is in Connecticut where the lab at issue is located.   Since neither party suggests that the

law of the state where Defendant is incorporated is applicable, the central issue regarding this

factor is the comparative importance of Plaintiffs' residence to Defendant's principal place of

business.  *Lewis-DeBoer v. Mooney Aircraft, supra*, 728 F.Supp. at 645.   I agree with Plaintiff

that Defendant's principal place of business in Connecticut is more significant to the occurrence in

this case, as the place where the negligent conduct occurred, when compared to the immaterial

and coincidental nature of Plaintiffs' domicile in Colorado.  "[T]here is no injustice to a

corporation in applying the law of the state where it has chosen to locate its principal place of

business."  *Id.* at 646 (*quoting Kozoway v. Massey-Ferguson, supra,* 722 F.Supp. at 644).

*D. Place where the Relationship, if any, Between the Parties is Centered*

Here, any underlying relationship between the parties is attenuated, at best, and is certainly

not centered or grounded in one particular place.  There is no indication that Plaintiffs chose to

use or contract with Defendant's lab in Connecticut.  It is presumed that Plaintiffs were not even

aware of the details of the lab used to test Mr. Fanning's prostrate specimen, including its

location.   Absent evidence otherwise, I give this factor no consideration in my choice-of-law

analysis as it carries little weight in determining which state has the most significant relationship to

8

the issues here.  *See Lewis-DeBoer v. Mooney Aircraft, supra*, 728 F.Supp. at 645.

Therefore, when weighing the relative degree of importance to each contact under the circumstances of this case – pursuant to the specific contact considerations outlined in Section 145 and the principles set forth in Section 6 of the Restatement – Connecticut had the most significant relationship to the occurrence and the parties at issue here.  The underlying injury occurred in Connecticut or, if the injury could be said to have occurred in Colorado at the time of the unnecessary prostatectomy, such factor would be of little weight in that the location was fortuitous and bears little relation to issues raised in this case.   More importantly, the negligent conduct causing the injury undisputably occurred in Connecticut, a factor I give significant weight under the circumstances of this case.   Finally, in light of the fact that the parties here did not have a relationship centered upon a particular place or state, Defendant's principal place of business is given more weight when balanced against Plaintiffs' residency/domicile.   Therefore, I conclude that Connecticut substantive law related to tort damages is applicable to this lawsuit based on diversity jurisdiction.

ACCORDINGLY, I DENY Defendant's Motion For Summary Adjudication of Question of Law  [**Doc # 39**] and, as a result of my ruling that Connecticut substantive law of damages is applicable to this case, I DISMISS Defendant's Second Defense of limited liability based on Colorado's Healthcare Availability Act, C.R.S. § 13-64-101, *et seq*.

Dated:  August ___16___, 2006 in Denver, Colorado.


BY THE COURT:


___s/Lewis T. Babcock_____
LEWIS T. BABCOCK, CHIEF JUDGE

10